Lewis N Stoddard, Bar Number 7766
HALLIDAY, WATKINS & MANN, P.C.
Attorneys for Guild Mortgage Company, a California Corporation
376 East 400 South, Suite 300
Salt Lake City, UT 84111
Telephone: 801-355-2886
Facsimile: 801-328-9714
Email: lewis@hwmlawfirm.com
File No.: 51284

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

In re:

**ALLAN RAY EICHHORN**

Debtor.

Chapter 7

Case No. 18-00198 TLM

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

Guild Mortgage Company, a California Corporation ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor having an address of 2866 South Bay Star Way, Meridian, ID 83642 (the "Property"). In support of this Motion, Movant respectfully states:

1.    A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor on February 23, 2018.

2.    The Debtor, Allan Ray Eichhorn, has executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $290,638.00 (the "Note"). A copy of the Note is attached hereto as Exhibit A. The Note was modified on September 23, 2015. A copy of the Loan Modification is attached hereto as Exhibit B.

3.      As evidenced by the assignments, endorsements, and/or alonges attached to the Note, the Note has been specially endorsed to Movant.  Movant is an entity entitled to enforce the Note because Movant is in possession, either directly or through the use of an authorized agent and/or document custodian, of the specially endorsed Note.

4.       Pursuant to that certain Deed of Trust (the "Deed of Trust"), all obligations (collectively, the "Obligations") of the Debtor, Allan Ray Eichhorn, under and with respect to the Note and the Deed of Trust are secured by the Property.  A copy of the recorded Deed of Trust is attached hereto as Exhibit C.  Movant is entitled to enforce the Note and foreclose on the Deed of Trust.

5.      All rights and remedies under the Deed of Trust have been assigned to the Movant pursuant to that certain assignment of deed of trust, a copy of which is attached hereto as Exhibit D.

6.      As of June 11, 2020, the outstanding amount of the Obligations less any partial payments or suspense balance is $269,463.45.

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred legal fees and costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

8.      The following chart sets forth the number and amount of contractual payments due pursuant to the terms of the Note that have been missed by the Debtor as of June 11, 2020:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 5 | 02/01/2020 | 06/01/2020 | $2,101.88 | $10,509.40 |
| Less postpetition partial payments (suspense balance): | | | | ($17.76) |

**Total: $10,491.64**

Additionally, Debtor is obligated to make on-going monthly payments, pursuant to the express terms of the Note and Deed of Trust that have or will accrue after June 11, 2020.

9.      The estimated market value of the Property is $310,000.00.  The basis for such valuation is Debtor's filed Schedule A/B: Property.

10.      Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $269,463.45.

11.      Cause exists for relief from the automatic stay for the following reasons:

(a)Pursuant to 11 U.S.C. § 362(d)(1), there is cause for relief from stay, including lack of adequate protection of an interest in property of such party in interest; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by law, the Note, the Deed of Trust, and applicable law, including but not limited allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and

obtain possession of the Property.

2.     That the Order be binding and effective despite any conversion of this bankruptcy

case to a case under any other chapter of Title 11 of the United States Code.

3.     That the 14-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

4.     For such other relief as the Court deems proper.

DATED this 23rd day of June, 2020

/s/ Lewis N. Stoddard
Lewis N Stoddard
Attorney for Movant

## <u>NOTICE OF MOTION</u>

TO:   THE DEBTOR, THE DEBTOR'S ATTORNEY, THE TRUSTEE, AND ANY OTHER
      PARTY IN INTEREST

YOU ARE HEREBY NOTIFIED that Guild Mortgage Company, a California
Corporation has filed its Motion for Relief from Stay.  Within twenty (20) days of the date of this
notice, Guild Mortgage Company, a California Corporation, its successors in interest, agents,
assignees, and/or assignors, shall ask the Court for an Order Granting Relief from the Automatic
Stay provisions of 11 U.S.C. § 362(a) to annul and terminate the Stay as requested in the Motion,
unless a party to this proceeding opposes the Motion for Relief from Stay filed by Guild
Mortgage Company, a California Corporation by filing and serving on the moving party a written
objection thereto within seventeen (17) days of filing the Motion.  The objection shall reasonably
identify those matters contained in the Motion which are to be at issue, and any other basis of
opposition to the Motion.  Absent the filing of a timely response, the Court may grant the relief
sought without a hearing.  A final hearing, if any, shall commence not later than thirty (30) days
after the conclusion of a preliminary hearing.  Failure to schedule a hearing and notify all parties,
including Guild Mortgage Company, a California Corporation, shall preclude further objections
to this Motion for Relief from Stay.

YOU ARE FURTHER NOTIFIED that pursuant to Rule 4001.2 of the Local Bankruptcy
Rules and 11 U.S.C § 362(e), thirty days after a request under § 362(d) for relief from the stay of
any act against property of the estate under subsection § 362(a), such stay is terminated with
respect to the party in interest making such request, unless the court, after notice and a hearing,
orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing
and determination under subsection § 362(d).  In addition, as required by Local Bankruptcy Rule
4001.2(d)(3), if an objection is filed to this motion, the objection must be served upon the
Movant and upon all parties receiving service of the motion.  In accordance with Local
Bankruptcy Rule 4001.2(e)(1), any party opposing a motion for stay relief must contact the
Court's calendar clerk to schedule a preliminary hearing.  At the time of the filing the objection
to a motion, the objecting party shall file and serve a notice of such hearing.

Dated: June 23, 2020

/s/  Lewis N. Stoddard
Lewis N Stoddard
Attorney for Movant

CERTIFICATE OF SERVICE OF
MOTION FOR RELIEF FROM STAY

I HEREBY CERTIFY that I served a true and correct copy of the above-listed claimant's
Motion for Relief from Stay and the Notice of Motion on the individuals listed below by hand
delivering, mailing, with the correct postage thereon, or through electronic notification to those
parties registered with the U.S. Courts District of Idaho CM/ECF system, on the June 23, 2020

Allan Ray Eichhorn
2866 S Bay Star Way
Meridian, ID 83642
Debtor
VIA U.S. MAIL

Noah G. Hillen
PO Box 6538
Boise, ID 83707
Chapter 7 Trustee
VIA ECF

United States Trustee
Washington Group Central Plaza
720 Park Blvd, Ste 220
Boise, ID 83712
VIA ECF

/s/ Lewis N. Stoddard
Lewis N Stoddard
Attorney for Movant

# EXHIBIT "A"



Loan No.

# NOTE

MIN:

FHA Case No:

| June 21, 2013 | EAGLE | Idaho |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

**2866 SOUTH BAY STAR WAY, MERIDIAN, ID 83642**
*[Property Address]*

**1.   PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION** and its successors and assigns.

**2.   BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Two Hundred Ninety Thousand Six Hundred Thirty Eight and 00/100ths** Dollars (U.S. **$290,638.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Four and 00/1000ths** percent (**4.000%**) per year until the full amount of principal has been paid.

**3.   PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.   MANNER OF PAYMENT**

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **August 1, 2013**. Any principal and interest remaining on the first day of **July, 2043**, will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at **5898 COPLEY DRIVE, SAN DIEGO, CA   92111** or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of **$1,387.55**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for payment adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge      ☐ Growing Equity Allonge      ☐ Other [specify]

**5.      BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6.      BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four and 00/1000ths percent (4.000%)** of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.      WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.      GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.      OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)          _____ (Seal)
ALLAN EICHHORN                  -Borrower                                        -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                        -Borrower

*[Sign Original Only]*

Pay to the order of

without recourse
GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION

By _____ (signature)
Name
Title

# EXHIBIT "B"

ELECTRONICALLY RECORDED - DO NOT
REMOVE THE COUNTY STAMPED FIRST
PAGE AS IT IS NOW INCORPORATED AS
PART OF THE ORIGINAL DOCUMENT

| | |
|---|---|
| ADA COUNTY RECORDER Christopher D. Rich | **2015-091103** |
| BOISE IDAHO    Pgs=3 VICTORIA BAILEY | 10/01/2015 10:04 AM |
| ALLIANCE TITLE - BOISE PRODUCTION CENTER | $16.00 |

WHEN RECORDED RETURN TO:

**GUILD MORTGAGE COMPANY**
**ATTN: LOSS MITIGATION DEPT.**
**P.O BOX 85304**
**SAN DIEGO CA  92186-5304**

GUILD#
FHA Case
MERS MIN#:

[Space Above this Line for Recording Data]

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 23rd day of September, 2015, between ALLAN EICHHORN, AN UNMARRIED MAN("Borrower") and Guild Mortgage Company ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), dated June 21, 2013 and recorded in Book or Liber June 24, 2013 at instrument number 113070422, of official ADA County, IDAHO and (2) the Note bearing the same date as, and secured by, the Security instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at 2866 SOUTH BAY STAR WAY, MERIDIAN, IDAHO 83642, the real property described being set forth as follows:

**LOT 9 IN BLOCK 7 OF SUTHERLAND FARM SUBDIVISION NO.2, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN BOOK 89 OF PLATS AT PAGE(S) 10242 THROUGH 10244, RECORDS OF ADA COUNTY, IDAHO.**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of September 1, 2015 the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $284,646.67 consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date.

2.  The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.875% from September 01, 2015. The Borrower promises to make monthly payments of principal and interest of U.S. $1,338.51, beginning on the 1st day of October, 2015 and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on September 1, 2045(the "Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

# ACCOMMODATION

1

3.  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

    If the Lender exercises this option, the Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4.  The borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note: and

    b)  all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

By: _____ (Seal)        _____ (Seal)
    Marian E. Johnston        Lender        ALLAN EICHHORN, Borrower
    Vice President
    Guild Mortgage Company

_____[Space Below This Line For Acknowledgments]_____

2

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

> A notary public or other officer completing this certificate verifies only the identity of the individual
> who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or
> validity of that document.

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

On September 25, 2015 before me, DAMON D. RABOTTE, Notary Public, personally appeared Marian
E. Johnston, who proved to me on the basis of satisfactory evidence to be the person (s) whose name (s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity (ies), and that by his/her/their signatures (s) on the instrument the person
(s) , or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

_____
signature of notary

> **DAMON D. RABOTTE**
> COMM. #2116803
> NOTARY PUBLIC • CALIFORNIA
> SAN DIEGO COUNTY
> Commission Expires June 22, 2019

STATE OF IDAHO
COUNTY OF ADA

On 9/24/15 , before me, Sarah M DeLong notary public, personally appeared
ALLAN EICHHORN, who proved to me on the basis of satisfactory evidence to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
signature of notary

**EXP. DATE: 4/2/2019**

> SARAH M. DeLONG
> NOTARY
> • •
> PUBLIC
> STATE OF IDAHO

# EXHIBIT "C"

ELECTRONICALLY RECORDED - DO NOT REMOVE THE COUNTY STAMPED FIRST PAGE AS IT IS NOW INCORPORATED AS PART OF THE ORIGINAL DOCUMENT.

ADA COUNTY RECORDER Christopher D. Rich   AMOUNT 37.00   10
BOISE IDAHO   **06/24/2013**   03:03 PM
DEPUTY  Bonnie Oberbillig
Simplifile Electronic Recording
RECORDED-REQUEST OF
ALLIANCE TITLE - BOISE PRODUCT

**113070422**

After recording please return to:
**GUILD MORTGAGE COMPANY - ATTN: DMD**

**5898 COPLEY DRIVE**
**SAN DIEGO, CA 92111**

_____[Space Above This Line For Recording Data]_____

FHA Case No.

Loan No.:

MIN:

# IDAHO DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on June 21, 2013.  The grantor is ALLAN EICHHORN, AN UNMARRIED MAN ("Borrower").  The trustee is FIRST AMERICAN TITLE INSURANCE COMPANY OF IDAHO ("Trustee").  The lender is GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION which is organized and existing under the laws of CALIFORNIA, and whose address is 5898 COPLEY DRIVE, SAN DIEGO, CA 92111 ("Lender").  The beneficiary under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS").  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.  Borrower owes Lender the principal sum of Two Hundred Ninety Thousand Six Hundred Thirty Eight and 00/100ths Dollars (U.S. $290,638.00).  This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on July 1, 2043.  This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in ADA County, Idaho:

LOT 9 IN BLOCK 7 OF SUTHERLAND FARM SUBDIVISION NO.2, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN BOOK 89 OF PLATS AT PAGE(S) 10242 THROUGH 10244, RECORDS OF ADA COUNTY, IDAHO.

which currently has the address of 2866 SOUTH BAY STAR WAY

[Street]

**MERIDIAN**
[City]
, Idaho 83642
[Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions also shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2. **Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).
3. **Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order of Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear expected. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall

not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.    Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.    Fees.**  Lender may collect fees and charges authorized by the Secretary.

**9.    Grounds for Acceleration of Debt.**

**(a)  Default.**  Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b)  Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. § 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all the sums secured by this Security Instrument if:

(i)   All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)  Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 90 days from the date hereof, Lender

may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 90 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall

not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of**

the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the persons or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law. Trustee may charge a reasonable fee for its reconveyance services and may refuse to reconvey this Security Instrument until such fee and the Trustee's recording costs are paid in full.

**20. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder in the manner prescribed by applicable law. Without conveyance of the Property and upon recording of the appointment in the official records of the county in which this Security Instrument is recorded, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Area and Location of Property.** The Property is (a) located within an incorporated city or village; (b) not more than 80 acres, regardless of its location, provided it is not principally used for the agricultural production of crops, livestock, dairy or aquatic goods; or (c) not more than 40 acres, regardless of its use or location.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were in a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider            ☐ Graduated Payment Rider
☒ Planned Unit Development Rider    ☐ Growing Equity Rider
☐ Other [specify]

The following signature(s) and acknowledgment(s) are incorporated into and made a part of this Idaho Deed of Trust dated **June 21, 2013** between **ALLAN EICHHORN, AN UNMARRIED MAN**, **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION** and **FIRST AMERICAN TITLE INSURANCE COMPANY OF IDAHO**.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
**ALLAN EICHHORN**                -Borrower                                    -Borrower
                                 [Printed Name]                                [Printed Name]

_____ (Seal)        _____ (Seal)
                                 -Borrower                                    -Borrower
                                 [Printed Name]                                [Printed Name]

**ACKNOWLEDGMENT**

State of _Idaho_                          §
County of _Ada_                           §
                                          §

On this _21st_ day of _____, in the year of _2013_ before me _the
undersigned_ personally appeared **ALLAN EICHHORN**, known or identified to me (or proved to me on the oath of
_____), to be the person whose name is subscribed to the within instrument, and acknowledged to me
that he (or they) executed the same.

                                          _____
                                          Signature of Officer

                                          _____
                                          Printed Name

                                          _____
                                          Title of Officer

[Stamp:]
TONYA A. REEVES
NOTARY PUBLIC
STATE OF IDAHO

(Seal)                                    My Commission Expires:    Residing in Meridian, Idaho
                                                                    My Commission Expires 4/20/2016

FHA Case No.

# FHA PLANNED UNIT DEVELOPMENT RIDER

MIN:

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **21st** day of **June, 2013**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION** ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**2866 SOUTH BAY STAR WAY, MERIDIAN, ID 83642**
*[Property Address]*

The Property Address is a part of a planned unit development ("PUD") known as

**SUTHERLAND FARM**
*[Name of Planned Unit Development]*

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.    So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage" and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.    Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.    If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment,

these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)      _____ (Seal)
ALLAN EICHHORN                    -Borrower                                       -Borrower

_____ (Seal)      _____ (Seal)
                                 -Borrower                                       -Borrower

# EXHIBIT "D"

| | |
|---|---|
| ADA COUNTY RECORDER Christopher D. Rich<br>BOISE IDAHO     Pgs=2 BONNIE OBERBILLIG<br>ALLIANCE TITLE - BOISE PRODUCTION CENTER | **2015-012713**<br>02/19/2015 11:17 AM<br>$13.00 |

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

**JUST LAW OFFICE**
381 Shoup Ave., Ste. 211
P.O. Box 50721
Idaho Falls, ID 83402

ELECTRONICALLY RECORDED - DO NOT
REMOVE THE COUNTY STAMPED FIRST
PAGE AS IT IS NOW INCORPORATED AS
PART OF THE ORIGINAL DOCUMENT.

GMC #          EICHHORN, ALLAN
MIN
MERS Phone: 1888-679-6377

## ASSIGNMENT OF DEED OF TRUST

KNOW ALL MEN BY THESE PRESENTS that for value received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)** as nominee for **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION**, its successors and assigns, as Beneficiary, (Assignor), does hereby sell, assign, and transfer unto **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION**, (Assignee), all of Assignor's right, title and interest in and to that certain Deed of Trust executed by **ALLAN EICHHORN, AN UNMARRIED MAN** as Grantor(s), naming **FIRST AMERICAN TITLE INSURANCE COMPANY OF IDAHO**, as Original Trustee and with **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)** as nominee for **GUILD MORTGAGE COMPANY, A CALIFORNIA CORPORATION**, its successors and assigns as Beneficiary recorded **JUNE 24, 2013**, in the records of **ADA** County, Idaho as Instrument No. **113070422**, and attaching to that certain real property described as follows:

PLEASE SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
IN WITNESS WHEREOF, Assignor has executed this Assignment under seal effective dated this **4th** day
of **February**      , 20 **15** .

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GUILD
MORTGAGE COMPANY, A CALIFORNIA CORPORATION, ITS SUCCESSORS AND ASSIGNS

By _____

SHAUNA M. FREE, ASSISTANT SECRETARY

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of California      )
County of San Diego  )          ss.

On **FEB 0 4 2015**          before me, I. FOOTE, Notary Public, personally appeared SHAUNA M. FREE, who proved to me on the basis of satisfactory evidence to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signatures (s) on the instrument the person (s) , or the entity upon behalf of which the person (s) acted, executed the instrument.

*I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.*

WITNESS my hand and official seal.

Signature_____ (Seal)

I.  FOOTE

| |
|---|
| **I. FOOTE**<br>Commission # 1971869<br>Notary Public - California<br>San Diego County<br>My Comm. Expires Mar 12, 2016 |

LOT 9 IN BLOCK 7 OF SUTHERLAND FARM SUBDIVISION NO.2, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN BOOK 89 OF PLATS AT PAGE(S) 10242 THROUGH 10244, RECORDS OF ADA COUNTY, IDAHO.